IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES LEON MILLER,

                   Plaintiff,

v.                                       Case No. 18-3100-JWB

LARRY BILLMAN,

                   Defendant.


## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for summary judgment. (Docs. 30, 31.) Plaintiff has not responded to the motion and the time for doing so has now expired. For the reasons set forth herein, Defendant's motion for summary judgment (Doc. 30) is GRANTED. Additionally, pending motions by Defendant to stay discovery (Doc. 32) and by Plaintiff to suppress statements in a *Martinez* report (Doc. 23) are DENIED as moot.

### I. Facts

The following facts are taken primarily from Defendant's statement of facts in his memorandum in support of summary judgment. (Doc. 31.) Defendant has properly supported his factual statement with citations to the record, including citations to Defendant's declaration and the affidavit of registered nurse Barb Addis.[1] (Docs. 31-1, 16-4.) Because Plaintiff has failed to respond to Defendant's statement, these facts are deemed admitted for purposes of summary

---

[1]Defendant previously filed a *Martinez* report (Doc. 16), which included Addis's affidavit and several non-sworn narrative statements. Plaintiff thereafter filed a "motion to suppress statements" (Doc. 23), in which he argued that non-affidavit narrative statements in the *Martinez* report should be stricken. (*Id.* at 2.) Defendant's statement of facts cites some of the challenged narrative statements, although only one of Defendant's asserted facts is actually dependent upon on a non-sworn narrative statement. (Doc. 31 at 4, Fact #20.) For purposes of summary judgment, the court has disregarded that single factual assertion and the accompanying narrative statement. Plaintiff's "motion to suppress" statements is accordingly denied as moot.

judgment. D. Kan. R. 56.1(b)(2).[2] *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (where no response filed, "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion.")

The court notes Plaintiff previously filed an affidavit of his own concerning the relevant incident (Doc. 24) as well as an affidavit by Peggy Beck. (Doc. 28.) The court will not consider those materials in determining the uncontroverted facts for summary judgment, however, because to do so would effectively make the court Plaintiff's advocate, searching the record for any relevant facts that might contradict Defendant's statement and support Plaintiff's claims. *See Hall v. Bellmon,* 935 F.3d 1106, 1110 (10th Cir. 1991) (although pro se pleadings are liberally construed, "we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.")

At all relevant times, Plaintiff was an inmate who was being housed at Oswego Correctional Facility ("OCF") in Oswego, Kansas, and Defendant was a Correctional Officer I at OCF.

Plaintiff was seen by Corizon medical staff at OCF on May 6, 2017, regarding complaints of difficult and painful urination.

On May 7, 2017, Plaintiff approached the officer's station at OCF and requested that he be allowed to go to medical for abdominal pain. Plaintiff did not appear to Defendant to be experiencing a medical emergency. Defendant called the Corizon nurse on duty, Dawn Glass, and was informed that Plaintiff needed to submit a sick call slip.

---

[2] Plaintiff was served with Defendant's motion, a supporting memorandum, and a notice to pro se litigants regarding summary judgment, through the court's electronic case filing system, which sent a document link to Plaintiff's institutional email address. Additionally, Defendant's certificates of service state that copies of these documents were sent to Plaintiff at OCF via first-class mail. (Docs. 30, 31, 34.)

On May 8, 2017, Plaintiff again approached the officer's station and requested that he be allowed to go to medical. Defendant instructed Plaintiff to return to his bunk and to submit a sick call slip based on the nurse's instructions from the day before. Plaintiff did not appear to Defendant to be experiencing a medical emergency. Plaintiff became visibly angry and started walking away when he noticed behavioral health provider Peggy Beck walking down the hall. Plaintiff raised his voice in an attempt to get Beck's attention. Plaintiff was in an unauthorized area and refused Defendant's direct orders to return to his bunk. Plaintiff began to argue with Defendant. Plaintiff began repeatedly shouting "cuff me up" while moving backwards toward Defendant. Because Defendant was backed against a wall and Plaintiff was refusing to comply with his orders, Defendant called for assistance.

Defendant grabbed Plaintiff's left wrist and attempted to place a handcuff on it. Because Plaintiff was bouncing and moving around, the handcuff clinched shut on Plaintiff's wrist. Plaintiff did not cooperate by giving his other hand and instead began to turn towards Defendant. When Plaintiff did so, Officer Brown assisted in restraining Plaintiff against the wall. Plaintiff continued to resist being handcuffed even after officers were attempting to restrain him against the wall.

Plaintiff did not appear to Defendant to be injured after the handcuffing incident. Plaintiff was in handcuffs for approximately 20 minutes after being placed "in the hole," an apparent reference to segregation or an isolation cell. Plaintiff does not allege actual injuries from the handcuffs.

Plaintiff was seen by Corizon medical staff on May 8, 2017, regarding complaints of abdominal pain. Before presenting to the nurse's visit on May 8, Plaintiff reported he had been in a verbal confrontation with an officer. Plaintiff did not complain to the nurse of a physical

confrontation or of excessive use of force. He did not describe any pain in his left shoulder, elbow, wrist, hand, or fingers during the May 8 nurse's visit.

It is the policy of the KDOC to medically evaluate inmates after they make use-of-force complaints against correctional officers. Had Plaintiff complained of a use of force by Defendant on May 8, he would have been evaluated by Corizon nursing staff.

On May 10, 2017, Plaintiff was evaluated by Corizon nursing staff regarding pain to his abdomen. He made no complaints of pain in his left shoulder, elbow, wrist, hand, or fingers.

On June 19, 2017, Plaintiff saw the nurse for a complaint of left wrist pain and numbness in the fingers on his left hand. An x-ray was taken on June 21, 2017, and returned negative findings for a fracture or dislocation of the left wrist.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Sotunde v. Safeway, Inc*., 716 F. App'x 758, 761 (10th Cir. 2017). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co*., 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Id.* The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

## III. Analysis

The complaint alleges Defendant used excessive force by applying the handcuffs too tightly on May 8, 2017, and that he exhibited deliberate indifference to Plaintiff's medical needs by denying Plaintiff access to medical staff. (Doc. 1 at 1-3.) Defendant moves for summary judgment on grounds of qualified immunity, arguing Plaintiff has failed to show the deprivation of any constitutional right or that the right in question was clearly established.

Qualified immunity protects public officials from damages unless their conduct was unreasonable in light of clearly established law. *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008). When the defense of qualified immunity is asserted, a plaintiff must show: 1) that the defendant's actions violated a federal constitutional or statutory right; and 2) that the right was clearly established at the time of the defendant's conduct. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). For a right to be clearly established, the contours of the right must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). This ordinarily requires "that there is a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017). For the reasons set forth below, the court concludes Defendant is entitled to summary judgment on the basis of qualified immunity.

A. *Excessive force*. The Eighth Amendment prohibits the use of cruel and unusual punishment. An Eighth Amendment excessive force claim "involves two prongs: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the officials acted with a sufficiently culpable state of mind." *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) (internal quotation marks omitted). "An official has a culpable state of mind

if he uses force 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

The uncontroverted facts are that at the time of the handcuffing incident, Plaintiff was arguing with Defendant, shouting, refusing orders, and moving around as Defendant attempted to place a handcuff on Plaintiff's left wrist. As Plaintiff was moving, Defendant clinched the handcuff shut on Plaintiff's wrist. Due to Plaintiff's continued resistance to being placed in cuffs, he had to be restrained by multiple officers. There was no visible injury to Plaintiff's wrist from the handcuffing, he did not complain to medical personnel about it at the time of the incident, and he cites no evidence that the handcuffing resulted in actual injury. Under the circumstances, the uncontroverted facts will not reasonably support an inference that Defendant applied the handcuffs to Plaintiff's wrist for the malicious and sadistic purpose of causing harm rather than to maintain order. *See Stevenson v. Cordoba*, 733 F. App'x 939, 945 (10th Cir. 2018) (where plaintiff resisted application of handcuffs, plaintiff "fails to show that the evidence supports an inference of malicious and sadistic conduct.") To the extent Plaintiff claims Defendant violated his Eighth Amendment rights by not loosening the handcuffs after Plaintiff was restrained, Plaintiff fails to show that Defendant's conduct was a clear violation of the Eighth Amendment. *Id.* at 946 (finding no Eighth Amendment cases that would have put defendant on notice that a refusal to loosen handcuffs was cruel and unusual punishment).

B. *Denial of access to medical care.* "A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Broadus v. Corr. Health Partners, Inc.*, ___F. App'x ___, 2019 WL 1998386, *4 (10th Cir. May 7, 2019) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2009)). Such a violation can arise when "prison

officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Id.* The test for deliberate indifference is both objective and subjective. In the context of "gatekeeper" liability (for denying access to care), this requires a plaintiff to show both "substantial harm" – which includes delay leading to lifelong handicap, permanent loss, or considerable pain – and a culpable state of mind in which the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quoting *Self v. Crum,* 439 F.3d 1227, 1231 (10th Cir. 2006)).

This aspect of Plaintiff's claim fails for multiple reasons. As an initial matter, the uncontroverted facts cannot support a finding that Defendant's conduct amounted to a denial of access to care. The fact that Defendant directed Plaintiff to fill out a sick call slip, as OCF procedures apparently called for, does not show a denial of access to care. Neither Plaintiff nor the record suggests any reason why he could not have completed a sick call slip and thereby obtained care. Moreover, the uncontroverted facts will not support a finding that Defendant was aware of a substantial risk of harm to Plaintiff from his actions. Finally, nothing is cited to show that a reasonable officer in Defendant's circumstances would have realized that requiring Plaintiff to fill out a sick call form to obtain medical care, as a nurse had directed, was a violation of the Eighth Amendment.

## IV. Conclusion

**IT IS THEREFORE ORDERED** this 20th day of May, 2019, that Defendant's motion for summary judgment (Doc. 30) is GRANTED. The clerk is directed to enter a judgment of dismissal in favor of Defendant. Plaintiff's motion to suppress statements (Doc. 23) and

Defendant's motion to stay discovery (Doc. 32) are DENIED as moot. Interested Party Kansas Department of Corrections is hereby terminated from the action.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE